IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CURTIS B. DUNCAN, et al,

        Plaintiffs,

v.                             CIVIL ACTION NO.   2:23-cv-00780

RIVERSIDE HEALTH AND REHABILITATION LLC, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Curtis B. Duncan's ("Plaintiff") Motion to Amend Complaint, Join Charleston Area Medical Center, and Remand to State Court.[1] (ECF No. 46.) For the reasons set forth below, the motion is **GRANTED**.

### I.    *Background*

Decedent James Duncan was admitted to Charleston Area Medical Center ("CAMC") on June 1, 2022, and remained hospitalized until June 17, 2022. (ECF No. 47 at 1.) Mr. Duncan was readmitted to CAMC multiple times during June and August 2022. (*Id.* at 1-2). Upon discharge from CAMC on June 17, 2022, Mr. Duncan was admitted to Riverside Health and Rehabilitation ("Riverside"). (*Id.* at 2.) Plaintiff alleges that during this period, Mr. Duncan suffered injuries that ultimately resulted in his death on September 3, 2022. (*Id.*)

---

[1] Also before the Court is the parties' Joint Motion to Vacate Scheduling Order. (ECF No. 52). This Motion is **DENIED** as moot.

1

Pursuant to the West Virginia Medical Professional Liability Act ("MPLA"), Plaintiff obtained medical records from CAMC and Riverside for the purposes of acquiring a Screening Certificate of Merit ("SCOM").  (*Id.*)  On September 21, 2023, Plaintiff received from his expert a SCOM which analyzed Mr. Duncan's medical records from Riverside and described a sacral pressure injury.  (*Id.*)  The next day, Plaintiff received from his expert a SCOM relating to Mr. Duncan's health and treatment at CAMC.  (*Id.* at 3.)  This SCOM analyzed Mr. Duncan's medical records and described the development of a left heel pressure injury.  (*Id.*)  Based on these SCOMs, Plaintiff proceeded under the theory that Riverside and CAMC caused two separate and distinct injuries and thus initiated separate actions against CAMC and Defendants (Riverside Health and Rehabilitation, LLC, d/b/a Riverside Health and Rehabilitation, Medical Rehabilitation Centers LLC d/b/a Exceptional Living Centers, and, Exceptional Living Tenant 1, LLC) in Kanawha County Circuit Court.  (*Id.* at 4.)

On December 6, 2023, Defendants removed the case to this Court based on diversity jurisdiction.  (ECF No. 1.)  Pursuant to scheduling orders issued by this Court and the Kanawha County Circuit Court, Plaintiff retained expert witness Dr. Mark Lazarus.  (*Id.* at 5.)  Upon reviewing Mr. Duncan's medical records, Dr. Lazarus informed Plaintiff that the alleged actions of Defendants and CAMC resulted in one continuous injury that culminated in Mr. Duncan's death.  (*Id.*)  Based on this analysis, Plaintiff filed his Motion to Amend Complaint and Join CAMC on July 11, 2024.  (ECF No. 46.)  Plaintiff further requests remand if his motion is granted, as diversity jurisdiction would be defeated.  (*Id.* at 6.)  Defendants filed their response in opposition on July 25, 2024.  (ECF No. 48.)  Plaintiff filed his reply on August 1, 2024.  (ECF No. 49.)  Thus, the motion is fully briefed and ripe for adjudication.

## *II.    Legal Standard*

Under the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Rule 16 states that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  With these rules at tension, the Fourth Circuit has held that "[a]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).  The "touchstone" of the good cause standard is diligence.  *Faulconer v. Centra Health, Inc.*, 808 F.App'x. 148, 152 (4th Cir. 2020).  "If the moving party knew of the underlying conduct giving rise to a claim but simply failed to raise it in an initial complaint, then the party cannot establish good cause under Rule 16." *Id.*  "Good cause requires the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence, and whatever other factors are also considered, the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule."  *Cook v. Howard*, 484 F.App'x. 805, 815 (4th Cir. 2012) (unpublished opinion) (citations omitted).

"When a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with 28 U.S.C. § 1447(e) . . . ."  *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).  This gives two options, "the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).  The decision to permit joinder of a nondiverse defendant "is committed to the sound discretion of the district court . . . ."  *Mayes*, 198 F.3d at 462.  In exercising its discretion, a district court is "entitled to consider all relevant factors, including: the extent to which the purpose of the amendment is to defeat federal jurisdiction,

3

whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* (internal citations omitted).

### III.  Discussion

Plaintiff seeks to amend his complaint under Rule 15 of the Federal Rules of Civil Procedure following a review of case medical records by subsequently retained expert witness Dr. Mark Lazarus. (ECF No. 47 at 6.) Plaintiff's amendment comes eight and a half months after filing the initial complaint, seven months after removal, and five weeks after receipt of Dr. Lazarus' report. The question is whether Plaintiff, despite these delays, has shown good cause to justify amending the complaint. This requires examining whether Plaintiff was diligent in his initial filings and subsequent decisions. *See Faulconer*, 808 F.App'x. at 152.

Here, Plaintiff initially filed separate cases against Defendants and CAMC in Kanawha County Circuit Court based on the analysis in SCOMs produced by a different qualified expert. (ECF No. 47 at 4.) Based on a newly obtained analysis by Dr. Lazarus, Plaintiff seeks to amend his complaint. (*Id.* at 5.) Defendants argue that the allegations are "blatantly identical" and "aris[e] from a common set of facts and legal questions." (ECF No. 48 at 6.) Defendants further argue that good cause does not exist because Plaintiff's delay in amending was based on Plaintiff's "own strategic and deliberate choices for venue and jurisdiction." (*Id.*) This Court disagrees.

As required by the MPLA, Plaintiff obtained the initial SCOMs from a qualified expert which opined on Mr. Duncan's injuries. (ECF No. 47 at 2-3.) Acting on the information in the SCOMs, Plaintiff filed two separate actions in state court. (*Id.* at 4.) There is no indication that Plaintiff knew or should have known that Mr. Duncan suffered one continuous injury, nor is there

4

any indication that Plaintiff should have gone against the analysis made by his qualified expert. Cases involving medical injuries can be complex, and as such, the MPLA requires SCOMs to be executed under oath by health care providers who are qualified as experts under West Virginia rules of evidence. West Virginia Code §55-7B-6. It would be the opposite of diligence for a Plaintiff to file a case going against the analysis of a retained expert unless that Plaintiff has reason to know the analysis is faulty.

Furthermore, such amendments may occur in cases involving multiple tortfeasors when the moving party was originally unsure of fault. *See Medline Industries, Inc. v. York Building Products Co., Inc.*, 702 F. Supp. 3d 403, 409 (D. Md. 2023) (finding good cause for a party seeking to amend an answer over two years past the original deadline due to new information about third-party contributions). While Plaintiff certainly could have amended his complaint sooner than five weeks after receiving Dr. Lazarus' report, the Fourth Circuit's policy is to "liberally allow amendment in keeping with the spirit of Federal Rule of Procedure 15(a)." *Galustin v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010); *see Medline Industries, Inc.*, 702 F. Supp. 3d at 409 (finding good cause despite the motion "facially appear[ing] as an eleventh-hour amendment"). Additionally, "[d]elay alone . . . is an insufficient reason to deny the plaintiff's motion to amend." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). Because Plaintiff's motion only comes after receiving Dr. Lazarus' report, which provided new analysis, Plaintiff has shown good cause to amend.

Even when good cause is found, other factors can justify denying leave to amend, including prejudice, bad faith, or futility. *Nourison Rug Corp.*, 535 F.3d at 298. Defendants argue that because the state court proceedings have progressed to the point of expert disclosures, Defendants would be prejudiced. (ECF No. 48 at 7-8.) While it is true the case has progressed, Plaintiff has

indicated that he has no intention to proceed in joint trial against all parties soon (ECF No. 49 at 5), and any prejudice would be mitigated through a continuance and new schedule. It is unlikely that Defendants would be so prejudiced as to disallow amendment. Furthermore, Defendants' argument that Plaintiff acted in bad faith is unsupported. As previously discussed, Plaintiff was operating based on the opinion of a qualified expert, and ignoring such opinion could have been deleterious to the Plaintiff. Therefore, this Court **GRANTS** Plaintiff's motion for leave to amend his complaint.

Upon granting Plaintiff's Motion to Amend, this Court must now examine whether joinder of a nondiverse defendant is proper. When deciding whether to join a nondiverse defendant in diversity jurisdiction cases, courts may either deny joinder, or grant joinder and remand to state court. 28 U.S.C. § 1447(e). This decision is left to the discretion of the court, which may consider all relevant factors. *Mayes*, 198 F.3d at 462. In particular, courts have focused on the purpose of the amendment, the plaintiff's diligence, and whether the plaintiff would be significantly injured if amendment is not allowed. *Id.* As discussed above, Plaintiff amended his complaint based on the new report provided by Dr. Lazarus. Despite Plaintiff waiting five weeks to file his amendment, there is no evidence this was done in bad faith or to defeat federal jurisdiction. Furthermore, Plaintiff has an interest in having a jury hear from all defendants together, rather than in parallel proceedings, which would also promote efficient judicial economy. For these reasons, this Court **GRANTS** Plaintiff's motion to join CAMC as a party. As CAMC is a non-diverse defendant, diversity jurisdiction is defeated. Therefore, this Court **REMANDS** the case to State Court.

*IV.   Conclusion*

For the reasons stated above, Plaintiff's Motion to Amend the Complaint and Join CAMC as a party is **GRANTED**.   Accordingly, it is further **ORDERED** that this case is **REMANDED** to the Kanawha County Circuit Court of West Virginia.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.   The Clerk is further **DIRECTED** to send a certified copy of this Order to the Clerk of the Circuit Court of Kanawha County.

ENTER:   November 18, 2024

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

7